# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BRANDON TERREL,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,[1]

Defendant.

_______________________________________/

Case No. 1:26-cv-00460-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I. INTRODUCTION

Plaintiff Brandon Terrel ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II. FACTUAL BACKGROUND

Plaintiff protectively filed claims for DIB and SSI payments on March 5, 2021, alleging he

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 7.)

became disabled on October 1, 2019, due to severe back pain and other impairments, including gastrointestinal ailments. (Administrative Record ("AR") 62, 82, 104, 121, 1183, 1469.) Plaintiff was born in 1978, was 41 years old on the alleged disability onset date, and has at least a high school education. (AR 44, 61, 81, 103, 120, 347, 1203.)

**A. Relevant Evidence of Record[3]**

**1. Medical Evidence**

In November 2019, Plaintiff presented for an appointment to treat radiating back pain. (AR 829–30.) He reported occasional constipation that was controlled by dietary changes and over-the-counter products. (AR 829.) It was noted that Plaintiff has "adequate analgesia, activity of daily living, negative adverse reaction, and negative abnormal behavior." (AR 829.) That same month, Plaintiff was assessed with gastroesophageal reflux disease (GERD) and prescribed omeprazole. (AR 951.)

Plaintiff complained of "stomach issues" in September 2020. (AR 942.) He reported aching upper abdominal pain. (AR 942.) That next month, he presented to the emergency department complaining of abdominal pain and associated nausea and vomiting. (AR 628–34.) He again presented to the emergency department due to an incident where he passed out. (AR 538.) He complained of abdominal pain and reported that he was scheduled to see a surgeon for possible gallbladder removal due to "sludge," which was noted to be the cause of his pain. (AR 538, 929, 934–35.) At another emergency room visit that month, Plaintiff complained of vomiting blood with abdominal pain. (AR 773–76.) A physical examination that month showed rebound tenderness in Plaintiff's abdomen, with rebound guarding and right upper quadrant tenderness. (AR 934.)

In December 2020, Plaintiff had his gallbladder removed. (AR 760–62.) That next month, Plaintiff complained of nausea, vomiting, and diarrhea. (AR 920–21.) He was assessed with nausea without vomiting, an umbilical hernia without obstruction or gangrene, and GERD with esophagitis. (AR 921.) He was prescribed medication for nausea and vomiting and referred to a surgeon to treat his hernia. (AR 921.)

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

Plaintiff requested a prescription for anxiety medications for "when he gets anxiety flare ups" in June 2021. (AR 1145–47.) On examination, Plaintiff was cooperative, alert, and oriented, with intact cognitive function, good judgment and insight, and normal mood and affect. (AR 1146.)

That same month, Plaintiff presented for treatment for anxiety. (AR 1148–49.) He reported that he had been out of work "for a year and a half" and had been experiencing "lingering negative symptoms such as vomiting and diarrhea" that preceded his anxiety. (AR 1148.) On mental status examination, he had intact cognitive functioning; adequate memory and judgment; euthymic mood; appropriate affect; and logical thought processes; with no tangentiality or circumstantiality present. (AR 1148.) The provider assessed Plaintiff with "adjustment disorder with mixed anxiety and depressed mood" and advised that Plaintiff should avoid all cannabis and alcohol. (AR 1148–49.) Also in June 2021, Plaintiff reported that medication was not helping his nausea and vomiting symptoms. (AR 1150–52.) He stated that he was vomiting "every 4-6 weeks." (AR 1150.)

In July 2021, Plaintiff presented for "continued treatment for health-related anxiety." (AR 1143–44.) He complained of frustration due to "severe gastrointestinal distress." (AR 1143.) Plaintiff reported that while on vacation to visit multiple states he "experienced no significant health symptoms," but that he was "sick for two days" upon returning. (AR 1143.) His mental status examination showed intact cognitive functioning; adequate memory and judgment; euthymic mood; appropriate affect; and logical thought processes; with no tangentiality or circumstantiality present. (AR 1143.) Plaintiff again presented for "continued treatment for health-related anxiety" in August 2021. (AR 1138–39.) His mental status examination showed intact cognitive functioning; adequate memory and judgment; euthymic mood; appropriate affect; and logical thought processes; with no tangentiality or circumstantiality present. (AR 1138.)

Plaintiff presented for a follow up appointment with his gastroenterologist in April 2022 to treat abdominal pain, nausea, vomiting, and diarrhea following a colonoscopy and esophagogastroduodenoscopy (EGD). (AR 1004–1007.) He was advised to increase his medication for heartburn. (AR 1004, 1007.) That next month, an EGD showed moderate to severe gastritis and a diaphragmatic hernia without obstruction or gangrene. (AR 1165–68.) The pathology report was negative for any malignancy. (AR 1172.) A colonoscopy performed that same month showed large

internal and external hemorrhoids. (AR 1169–71.)

In June 2022, Plaintiff presented for another follow up to treat abdominal pain, nausea, vomiting, and diarrhea. (AR 1160–63.) His colonoscopy showed lymphocytic colitis and he was placed on budesonide. (AR 1163.) His EGD was "completely normal." (AR 1163.) A mental status examination was performed, showing coherent thought processes; an ability to perform accurately serial sevens; intact recent and remote memory; intact cognitive functions; neutral mood; and appropriate affect. (AR 1162.)

Plaintiff established care with Alexandra Barnes, NP in September 2022. (AR 1710–11.) His physical examination was normal. (AR 1710–11.) That next month, Plaintiff complained of low energy to NP Barnes. (AR 1712.) His physical examination was normal as before. (AR 1712.)

In November 2022, Plaintiff presented for a follow up appointment with his gastroenterologist. (AR 978–82.) Plaintiff reported an "improvement in symptoms" and stated that when he started taking budesonide and stopped using marijuana, his nausea and vomiting were "completely gone." (AR 978.) A mental status examination was performed, showing coherent thought processes; an ability to perform accurately serial sevens; intact recent and remote memory; intact cognitive functions; neutral mood; and appropriate affect. (AR 980.) Plaintiff was assessed with diarrhea, nausea with vomiting, and lymphocytic colitis, and was advised to resume budesonide and to avoid marijuana. (AR 981.)

Plaintiff presented to NP Barnes for management of testosterone in March 2023. (AR 1713.) A physical examination was normal. (AR 1713.) In May 2023, Plaintiff was seen by Sherron Lewis, LMFT. (AR 1754.) He reported that he enjoys listening to podcasts. (AR 1746, 1753.) Plaintiff reported to LMFT Lewis in August 2023 that he had built a shop on his property. (AR 1749.)

In June 2023, Plaintiff requested from NP Barnes a referral to a new gastroenterologist. (AR 1715–16.) NP Barnes noted his previous diagnosis of lymphocytic colitis. (AR 1715.) It was noted that he had been on budesonide for five months and had "improved" but was having "issues" again after he stopped taking the medication. (AR 1716.)

Plaintiff reported to his new gastroenterologist in July 2023 that since he had been off budesonide for two months, he had been experiencing loose stools "about 5-6 a day." (AR 1672–

73.) Budesonide was resumed. (AR 1674.) That next month, Plaintiff reported that the budesonide is helping and that he is down to one stool per day. (AR 1672.) In October 2023, Plaintiff's diarrhea had "gotten much better" with an increased dosage of budesonide. (AR 1672.) The gastroenterologist advised that there was no need for Plaintiff to repeat an EGD or colonoscopy. (AR 1672.)

In April 2024, Plaintiff was seen by a specialist to treat his nocturnal acid reflux, GERD, and hernia symptoms. (AR 1594.) The provider recommended surgical intervention. (AR 1595.) Plaintiff presented to NP Barnes in July 2024 for "management of chronic pain." (AR 1485–87.) He reported that he was trained to be a "cop and a mechanic." (AR 1485.) On examination, Plaintiff had a positive straight leg raise test, general abdominal tenderness with distention, 5/5 lower extremity strength, and no muscle atrophy. (AR 1485–86.)

Plaintiff underwent a hernia repair in September 2024. (AR 1554–55.) At his post-hernial repair follow up appointment that same month, Plaintiff reported his heartburn has "gone." (AR 1727.) In December 2024, it was noted by Plaintiff's gastroenterologist that he has "done very well" since his hernia surgery. (AR 1672.) He reported he had stopped taking his acid reflux medication as he was no longer experiencing symptoms. (AR 1672.)

In February 2025, Plaintiff told LMFT Lewis that he'd been "trying to stay on task with his life by imagining he had a job working from 8-5 and this had been helping him stay more focused." (AR 1735.) He reported in March 2025 visiting an app he saw on TikTok. (AR 1734.) In April 2025, Plaintiff told LMFT Lewis that he had been teaching his son how to work on automobiles. (AR 1733.)

**2. Opinion Evidence**

In February 2023, LMFT Lewis prepared a document titled "Abstract of Records," in which she wrote, "It's my professional opinion, given what [Plaintiff] has reported regarding back pain, stomach pain, and bouts of depression that he would do better if he could be rehabilitated to a career that would allow him to be able to rest more during the day." (AR 1108.)

NP Barnes completed a "Physical Medical Source Statement" in July 2024. (AR 1489–92.) On the form, she indicated that Plaintiff has been her patient since September 2022. (AR 1489.)

She described tenderness to palpation in Plaintiff's low back, as well as limited range of motion and positive straight leg test. (AR 1489.)

NP Barnes opined Plaintiff could rarely lift/carry less than 10 pounds, and he could never lift/carry greater weight. (AR 1490.) She opined Plaintiff could walk zero city blocks, and in an eight-hour workday, he could sit and stand/walk less than two hours each. (AR 1489–90.) She opined he must be permitted to walk around for five minutes every 10 minutes. (AR 1490.) She also opined that he would need a 20–30-minute break every hour. (AR 1492.)

NP Barnes further opined Plaintiff requires a cane for pain and weakness. (AR 1490.) She found Plaintiff could rarely twist, stoop, crouch, squat, and climb. (AR 1491.) She opined Plaintiff has no significant limitations with reaching, handling, or fingering, and that he could reach only 80% of the day, handle only 10-30% of the day, and finger 50% of the day. (AR 1491.) She estimated that he would be off task at least 25% of the day and that he would miss work more than four days per month. (AR 1491.) She indicated Plaintiff was incapable of even low stress work. (AR 1491.) NP Barnes further noted that Plaintiff needed to be "close to a bathroom for frequent bathroom breaks." (AR 1492.) She stated the onset date for these limitations was 2019. (AR 1492.)

In August 2024, LMFT Lewis completed a "Mental Residual Functional Capacity Questionnaire." (AR 1494–96.) On that form, LMFT Lewis indicated that she began seeing Plaintiff in October 2023. (AR 1494.) She opined Plaintiff has no limitation in understanding, remembering, or carrying out very short and simple instructions or in making simple work-related decisions, but he would be limited in maintaining concentration for extended periods, performing activities within a schedule, and sustaining an ordinary routine without special supervision for 5% (24 minutes) of the workday. (AR 1494–95.) She opined he would be unable to complete a normal workday or week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods for 15% (72 minutes) of the workday. (AR 1495.) As explanation for such limitation, LMFT Lewis wrote, "Pain and physical limitations due to medical conditions interfere with Plaintiff's remembering and carrying out detailed instructions. His nausea and frequent need for restroom breaks preclude normal workday functioning due to interruptions based on these medical and resultant psychological stress." (AR

1495.)

LMFT Lewis further found Plaintiff had no problems interacting with the public, asking questions, or maintaining socially appropriate behavior, but he would be limited in accepting criticism or getting along with coworkers without distracting them for 10% (48 minutes) of the workday. (AR 1495.) She opined Plaintiff has no problems responding appropriately to changes in work setting, but he would have problems setting realistic goals or making plans. (AR 1495.) She opined Plaintiff would be absent from work five days or more. (AR 1495–96.) She stated that these limitations began in 2019. (AR 1496.)

**B. Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on August 31, 2021, and again on reconsideration on November 19, 2021. (AR 145–50, 153–58, 1183.) Following a hearing, an Administrative Law Judge (ALJ) issued a written decision on March 5, 2023, finding Plaintiff not disabled. (AR 17–28.) Plaintiff appealed the decision to the district court. (AR 1291–97.) The parties thereafter voluntarily remanded the case for further proceedings. (AR 1298–1304.) On remand, Appeals Council directed the assigned ALJ on remand to conduct a *de novo* hearing, to take any further action needed to complete the record, and to issue a new written decision. (AR 1305–1308.)

At a second hearing held on May 29, 2025, Plaintiff appeared telephonically with his attorney and testified before an ALJ as to his alleged disabling conditions and work history. (AR 1227–56.) A vocational expert (VE) also testified at the hearing. (AR 1256–61.)

**1. Plaintiff's Testimony**

Plaintiff testified that he last worked in September 2022 as a security guard. (AR 1228.) His friend was the head of security and got him the job. (AR 1229.) The job was primarily sitting, with a bathroom nearby, but he would sometimes have accidents. (AR 1229, 1247.) Though he was hired to work three days a week, he reduced it to two hours a week. (AR 1229.) He was still calling out on a weekly basis due to stomach issues. (AR 1229, 1247.) When he learned that the employer needed to let someone go, he volunteered to be released. (AR 1229.) Prior to his work as a security guard, he had last worked shortly before the start of the pandemic. (AR 1230.) He testified that he

once worked as a police officer, but he was fired for purchasing testosterone online from another country. (AR 1233–34.)

Plaintiff testified that he lives with his wife and two sons, ages 19 and 21. (AR 1234, 1237–38.) He no longer works on cars, but he has instructed his sons how to repair vehicles. (AR 1234–35.) He recently showed one of his sons how to change the brake pads on his truck. (AR 1235.) He enjoys listening to podcasts, but he cannot listen for more than 30 minutes at a time. (AR 1236.) He spends his days eating, walking around for exercise, and going outside to get some sun. (AR 1236.) When outside, he tends to the plants. (AR 1238.) He does not do much home repair, but he has unclogged a toilet. (AR 1238.) He relies on his friend if he needs anything "big" done." (AR 1238.) Plaintiff testified he does some dusting around the house, but he does not sweep, mop, or vacuum. (AR 1238–39.) He can bathe himself, with help from his wife, if needed. (AR 1255.) He walks for exercise and can walk 30-45 minutes at a time before needing to stop. (AR 1239.) Plaintiff testified that he can lift/carry about 10 pounds for one-third of the day. (AR 1241.)

Plaintiff testified that his sister and mother live about 4.5 hours from him, by automobile. (AR 1231.) He sees them every now and then, but he must stop every 30-45 minutes for a bathroom break. (AR 1231.) He took a road trip to Oregon, Idaho, Utah, Nevada, and Montana, during which he had to stop for breaks to go to the bathroom, stretch, and move around. (AR 1231–33, 1245.) Plaintiff also traveled to a report in Mexico via plane, but he had to be near a restroom and stayed in the hotel room to sleep for two days after arriving. (AR 1240–41, 1246.) He has weekly "flare ups" of his gastrointestinal symptoms, for which he takes budesonide. (AR 1237.) He requires ready access to a bathroom. (AR 1249–51.)

Plaintiff does not do much socialization, but he does have a friend who will come to visit. (AR 1239.) He enjoys shopping with his wife, including trips to Costco. (AR 1239, 1240.) He also enjoys watching auto and home repair programs on television. (AR 1239–40.) He attends church when he can. (AR 1240.) He can drive, and he drives himself to places when his wife works. (AR 1242–43.) He drove himself to the UCLA Medical Center. (AR 1243.) He knows how to use GPS navigation. (AR 1243.) He has never used public transportation. (AR 1243.) He can send and read texts and emails. (AR 1243.) He does not use a computer, but he has a smartphone on which he

visits apps like TikTok. (AR 1243–44.) He can make simple meals, such as scrambled eggs. (AR 1244.) He testified that he is scared for no reason and has crying spells "all the time." (AR 1254–55.) He takes daily naps for one to two hours and sleeps about five hours per night. (AR 1255–56.)

**2. VE's Testimony**

The ALJ asked the VE to consider a person of Plaintiff's age and education, with no past work. (AR 1257.) The VE was also to assume this person could perform light work with the following additional limitations: he can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, or crawl; should avoid exposure to workplace hazards, such as work in proximity to moving, mechanical parts or work in high, exposed places; can understand, remember, and carry out simple instructions; and can occasionally interact with supervisors, co-workers, and the public. (AR 1257.) The VE testified that such a person could perform light exertional jobs in the national economy such as housekeeping cleaner, Dictionary of Operational Titles (DOT) code 323.687-014, with a specific vocational preparation (SVP)[4] of 2; cafeteria attendant, DOT code 311.677-010, with an SVP of 2; and routing clerk, DOT code 222.687-022, with an SVP of 2. (AR 1257–58.)

Considering a second hypothetical, where a person would have the same limitations as the first but at the sedentary exertional level, the VE testified that such a person could perform the positions of ampule sealer, DOT code 559.687-014, with an SVP of 2; printed circuit board (PCB) assembly touchup screener, DOT code 222.687-022, with an SVP of 2; and stuffer, DOT code 731.685-014., with an SVP of 2. (AR 1258–59.) According to the VE, considering a third hypothetical involving the same limitations in either the first or second hypothetical but also requiring a bathroom within 200 feet of the workstation, none of the identified jobs would be available. (AR 1259.) The VE further testified that an employer would tolerate no more than 10% off-task time and one absence per month. (AR 1259.)

On questioning by Plaintiff's attorney, the VE considered a fourth hypothetical, where an

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

individual has the same limitations as in the third hypothetical, but also must need four additional unscheduled bathroom breaks. (AR 1261.) The VE testified that there would be no work such a person could perform. (AR 1261.)

**C. The ALJ's Decision**

In a decision dated July 30, 2025, the ALJ once again found that Plaintiff was not disabled, as defined by the Act. (AR 1183–1205.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 1186–1205.) The ALJ decided that Plaintiff met the insured status requirements of the Act through September 30, 2023, and he had not engaged in substantial gainful activity since October 1, 2019, the alleged onset date (step one). (AR 1186–87.) At step two, the ALJ found Plaintiff's following impairments to be severe: lumbar degenerative disc disease with fusion hardware; degenerative disc disease of the cervical spine; lymphocytic colitis; gastroesophageal reflux disease; hiatal hernia, status-post repair; anxiety disorder; and persistent depressive disorder with childhood post-traumatic stress disorder. (AR 1187–88.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 1189–91.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b), except he can occasionally climb ramps and stairs; he can never climb ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel, crouch, or crawl; he should avoid exposure to workplace hazards, such as work in proximity to moving

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

> mechanical parts or work in high, exposed places; he can understand, remember, and carry out simple instructions; and he can occasionally interact with supervisors, coworkers, and the public.

(AR 1191–1203.) Although the ALJ recognized that Plaintiff's impairments "reasonably could be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (AR 1203.)

The ALJ determined that Plaintiff had no past relevant work (step four) but that, given his RFC, he could perform a significant number of jobs in the national economy, specifically housekeeping cleaner, cafeteria attendant, and routing clerk (step five). (AR 1203–1204.) The ALJ concluded Plaintiff was not disabled from October 1, 2019, through the date of the decision. (AR 1205.)

Plaintiff filed exceptions to this decision before the Appeals Council, which denied review on December 10, 2025. (AR 1174–75.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B. Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*,

253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the RFC is not supported by substantial evidence because the ALJ did not appropriately consider the medical opinions of NP Barnes and LMFT Lewis and failed to articulate clear and convincing reasons for discounting his testimony regarding his subjective complaints. (Docs. 13, 19.) The Commissioner responds that the ALJ's consideration of the medical opinion was proper and supported by substantial evidence and the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 18.) The Court finds no error in the ALJ's decision and will affirm.

### A. The ALJ's Treatment of the Medical Opinions Was Not Erroneous

#### 1. Legal Standard

An ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source"

and "explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(b)); *see also* 20 C.F.R. § 416.920c(b). The Social Security Administration's regulations provide that the most important factors to consider when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant... objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1). Consistency refers to "the extent to which a medical opinion is 'consistent...with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. § 416.920c(c)(2).

*Woods* makes clear that to reject properly a medical opinion under the substantial evidence standard, the ALJ "must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. (quoting 20 C.F.R. § 404.1520c(b)); *see also* 20 C.F.R. § 416.920c(b).

**2. Analysis**

With these legal standards in mind, the Court reviews the ALJ's consideration of the medical opinions of NP Barnes and LMFT Lewis.

a. <u>NP Barnes</u>

As pertinent here, NP Barnes opined that Plaintiff would need a 20–30-minute break every hour, would be off task at least 25% of the day, would miss work more than four days per month, and would need to be "close to a bathroom for frequent bathroom breaks." (AR 1491, 1492.) The ALJ determined that the opinion was "generally unpersuasive" because (1) the "degree of functional limitation opined" was internally inconsistent and not "reasonably support[ed]" by her clinical findings and treatment notes, and (2) it was "generally inconsistent with other evidence." (AR 1194, 1195.)

Plaintiff does not make any argument specifically directed to the supportability of NP Barnes' opinion, challenging instead the ALJ's determination that the opined limitations were inconsistent with the record. (*See* Doc. 13 at 7–31; Doc. 19 at 2–6.) The Court nevertheless finds

that the ALJ properly evaluated the supportability of NP Barnes' opinion on the basis that her "physical findings often revealed no abnormalities" and the existence of "internal inconsistency" within the opinion (AR 1195 (citing AR 1490, 1491, 1492, 1710–11, 1712, 1713)). *See, e.g., Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (finding unpersuasive a physician's opinion that was unsupported by his noted observations); *Jandrejack v. Saul*, 843 F. App'x 993, 995 (9th Cir. 2021) (internal inconsistencies can serve as a valid reason for discounting a physician's opinion).

As to consistency, the ALJ found NP Barnes' opined limitations due to off task behavior, absenteeism, and the need for a bathroom breaks inconsistent with the other evidence of record. (AR 1196–97.) Substantial evidence supports this finding. The ALJ observed that Plaintiff's "gastrointestinal issues have not been present for the entire period under consideration," citing a November 2019 treatment note for back pain where he reported only occasional constipation that was controlled with dietary changes and over-the-counter products. (AR 1196 (citing AR 829).) The ALJ also noted that after an "escalation of 'stomach issues'" in September and October 2020, Plaintiff had his gallbladder removed, which "improved his symptoms." (AR 1196 (citing AR 538, 628–34, 773–76, 760–62, 929, 934–35, 942).) The ALJ observed that while Plaintiff's nausea, vomiting, and diarrhea symptoms persisted post-gallbladder surgery (AR 1196 (citing AR 921, 1004, 1007, 1150)), such symptoms significantly improved after he was diagnosed with lymphocytic colitis and prescribed budesonide in June 2022 (AR 1197 (citing AR 978, 1672–74, 1716)). *Cf. Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for [Social Security] benefits."). The ALJ additionally noted that Plaintiff's heartburn and reflux symptoms, which persisted despite the budesonide, were completely resolved following a hernia repair in September 2024. (AR 1197 (citing AR 1554–55, 1672, 1727).)

Plaintiff asserts that the ALJ "cherry-picked" evidence in finding NP Barnes' opinion inconsistent with the record, reciting almost twenty pages of records and testimony relating to his "gastrointestinal issues" that the ALJ allegedly overlooked. (*See* Doc. 13 at 12–31; *see also* Doc. 19 at 5–6.) Review of the ALJ's decision, however, demonstrates that the ALJ <u>did</u> consider this evidence in evaluating NP Barnes' opinion, even if they did not discuss each record Plaintiff cites

individually (*see* AR 1196–97 (citing AR 538, 628–34, 773–76, 760–62, 920–21, 929, 934–35, 942, 978–82, 1004–1007, 1143, 1148, 1150–52, 1160–63, 1165–68, 1169–71, 1554–55, 1594, 1595, 1672–73, 1674, 1710–11, 1712, 1715–16, 1727)). *See Bostwick v. Berryhill*, 677 F. App'x 344, 345 (9th Cir. 2017) ("[A]n ALJ need not discuss every single piece of evidence.") (citing *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)). The ALJ's discussion of NP Barnes' opinion, which Plaintiff himself describes as "lengthy" (Doc. 13 at 9), stands in contrast to *Gonzalez v. Kijakazi*, relied on by Plaintiff (*id*. at 9–10), in which the ALJ based its persuasiveness analysis on "cursory findings" found in six pages selected from the "780-page administrative record." *See id*., No. 1:20-CV-01530-SKO, 2022 WL 267438, at *10–11 (E.D. Cal. Jan. 28, 2022).

Plaintiff is correct that the ALJ must not cherry-pick instances of no or low symptomology without considering the context, such as instances of high symptomology. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998); *see also Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (quoting *Tackett*, 180 F.3d at 1098) (the Court "cannot affirm . . . 'simply by isolating a specific quantum of supporting evidence,' but 'must consider the record as a whole, weighing both evidence that supports and evidence that detracts'). The Court does not concur with Plaintiff, however, that the ALJ committed this error. As has been seen, and contrary to Plaintiff's contention, the ALJ did not fail to consider the evidence Plaintiff identifies.

The true gravamen of Plaintiff's challenge to the ALJ's decision appears to be the ***conclusion*** the ALJ drew from this evidence, namely, that there was "no reasonable basis upon which to include a requirement that [Plaintiff] be permitted additional breaks or ready access to a restroom." (AR 1197.) Plaintiff may disagree with this conclusion, but the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). When the evidence is susceptible to more than one rational interpretation, as is the case here, it is the Commissioner's conclusion that must be upheld. *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas*, 278 F.3d at 954. *Cf. White v. Comm'r Soc. Sec.*, 572 F.3d 272, 285 (6th Cir.

2009) ("The problem with [plaintiff's] cherry picking argument, however, is that it cuts both ways. She too cherry picks data."). Thus, the ALJ did not err by finding NP Barnes' opinion unpersuasive.

b. <u>LMFT Lewis</u>

LMFT Lewis opined, in pertinent part, that Plaintiff would be unable to complete a normal workday or week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods for 15% (72 minutes) of the workday. (AR 1495.) She explained that "[p]ain and physical limitations due to medical conditions interfere with Plaintiff's remembering and carrying out detailed instructions. His nausea and frequent need for restroom breaks preclude normal workday functioning due to interruptions based on these medical and resultant psychological stress." (AR 1495.) LMFT Lewis further found that Plaintiff would be absent from work five days or more. (AR 1495–96.) She also indicated that "given what [Plaintiff] has reported regarding back pain, stomach pain, and bouts of depression that he would do better if he could be rehabilitated to a career that would allow him to be able to rest more during the day." (AR 1108.)

In determining that the opinions were "unpersuasive," the ALJ first observed that LMFT Lewis was "not an acceptable medical source to diagnose impairments" and "provides no support for any limitations based on physical symptoms" apart from Plaintiff's reports. (AR 1200, 1201.) Plaintiff criticizes the ALJ for discrediting LMFT Lewis' opinion because of the "extent of the relationship with [Plaintiff]" (Doc. 13 at 33), but that is not what the ALJ did. Rather, the ALJ noted that to the extent LMFT Lewis' opined limitations are based on Plaintiff's physical symptoms, they are "unrelated to [her] professional qualifications as a mental health therapist" and she "possesses no professional qualifications to evaluate" them (AR 1200, 1201), which was a valid basis to find limitations regarding Plaintiff's physical functioning unsupported. *See, e.g., Nadon v. Bisignano*, 145 F.4th 1133, 1137 (9th Cir. 2025) (affirming ALJ's decision to discount an opinion from a social worker, who was "not an acceptable medical source," that the plaintiff was unable to do any work requiring attention or physical activity and would have excessive absences because, among other reasons, she "did not have expertise in physical ailments such as fibromyalgia").

The ALJ further found LMFT Lewis' opinion "not fully supported" by her treatment history

and treatment notes. (AR 1200–1201.) Specifically, the ALJ indicated that the alleged onset date for LMFT Lewis' opined limitations was 2019, "years before she began treating him" in 2023. (AR 1200 (citing AR 1494, 1496).) The ALJ also "carefully considered" LMFT Lewis' "handwritten, sometimes illegible, and sparse" treatment notes, which showed "no indication that she ever performed mental status examinations that tested any of the areas in which she has offered an opinion." (AR 1200 (citing AR 1733–58).)

Plaintiff does not dispute this evidence, which is supported by the record. He asserts instead that LMFT Lewis' opinion was made on a "retrospective" basis and thus should not have been found lacking in support. (Doc. 13 at 35.) However, other than his assertion, Plaintiff does not establish that the opinion regarding his mental functioning was offered retrospectively. *See Callahan v. Kijakazi*, 657 F. Supp. 3d 1368, 1382 (E.D. Cal. 2023) (finding ALJ's determination of non-persuasiveness proper where the plaintiff did not "establish that [the physician] rendered her opinion retrospective" to the relevant period); *see also Watkins v. Astrue*, 357 Fed. App'x. 784, 786 (9th Cir. 2009) (affirming rejection of treating physician's opinion where "questionnaire [was] written in the present tense" and "made no indication" it was retroactive).

Moreover, the ALJ did not predicate its supportability determination on this reason alone. The ALJ also "carefully considered" LMFT Lewis' treatment notes, and found they contained no mental status examinations to substantiate her opinion. (AR 1200.) Plaintiff contends that the ALJ's notation that the treatment notes were "sometimes illegible" and "sparse" created an ambiguity that triggered the ALJ's duty to develop the record, citing *Garcia v. Colvin,* No. CV 14-02528-GW (KS), 2015 WL 7573653, at *8 (C.D. Cal. Nov. 25, 2015). (Doc. 13 at 35–36.) Not so. Unlike *Garcia*, the ALJ here did not discount LMFT Lewis' opinion based on the illegibility of her treatment notes. While the notes were "sometimes illegible," they were at other times not, and from them the ALJ was able to determine that, while they documented that Plaintiff "taught his son how to work on automobiles," "enjoys using social media and traveling," and "works in the shop on his property," they did not contain any mental status examinations.[6] (AR 1200–1201; *see also* AR 1733, 1734,

---

[6] During the step three analysis, the ALJ was also able to discern from LMFT Lewis' treatment notes that Plaintiff enjoyed listening to podcasts and that he had been "trying to stay on task with his life by imagining he had a job working from 8-5 and this had been helping him stay more focused." (AR 1190 (citing AR 1735, 1746, 1753).)

1749.) Again, Plaintiff does not dispute this evidence. He also does not point to any mental status examinations or anything else in LMFT Lewis' treatment notes that would support the opined limitations. The ALJ's supportability determination therefore stands. *See Kitchen*, 82 F.4th at 740.

With respect to consistency, the ALJ determined that LMFT Lewis' opinion that Plaintiff would need additional absences and be precluded from completing a normal workday or workweek for more than 15% of the workday not consistent with mental health records from his psychologist and other providers. (AR 1201–1202 (citing AR 978–82, 1143–44, 1145–47, 1148–49, 1160–63).) This finding is supported by substantial evidence. Mental status examinations conducted by both Plaintiff's psychologist and gastroenterologist documented full orientation with fluent speech and coherent thought processes; intact recent and remote memory and judgment; age-appropriate fund of knowledge; intact higher cognitive functions; neutral mood and affect; the ability to accurately perform serial sevens, simple calculations, and understand proverbs; and a lack of tangentiality or circumstantiality affecting his focus (*see* AR 980, 1138, 1143, 1146, 1148, 1162). *See Woods*, 32 F.4th at 793 (upholding ALJ's persuasiveness analysis where opinion was inconsistent with the "overall treating notes and mental status exams in the record").

Plaintiff asserts that the ALJ "failed to discuss the fact that [Plaintiff] was referred to behavioral health after reporting depression due to his severe gastrointestinal issues." (Doc. 13 at 34.) Plaintiff is mistaken. As the foregoing demonstrates, the ALJ did discuss Plaintiff's treatment for depression and anxiety by a psychologist, yet ultimately concluded that such treatment notes were not consistent with LMFT Lewis' opined limitations. It is this conclusion with which Plaintiff disagrees, but it will not be disturbed. *See Batson*, 359 F.3d at 1196; *Thomas*, 278 F.3d at 954. The Court therefore finds no error in the ALJ's evaluation of LMFT Lewis' opinion.

**B. The ALJ Properly Found Plaintiff Less Than Fully Credible**

**1. Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The

claimant is not required to show that [their] impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[7] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**2. Analysis**

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 1203.) In view of this finding, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for

[7] The Court rejects the Commissioner's contention that a lesser legal standard applies. (*See* Doc. 18 at 8 n.4.)

Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Plaintiff asserts that "there is very little summarization of his extensive and at times, extremely personal, hearing testimony . . . regarding the extent of his severe gastrointestinal issues" and "very little to no discussion of [his] very specific testimony regarding his significant limitations due to gastroenterological issues, notably accidents and flareups that are unexpected," such that the Court cannot "conclude that the ALJ rejected [Plaintiff's] testimony on permissible grounds." (Doc. 13 at 29–31; *see also* Doc. 19 at 7–8.) However, the Ninth Circuit has held that its "cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

Nevertheless, the ALJ in this case did discuss Plaintiff's testimony regarding his "gastrointestinal issues," recounting Plaintiff's statements that his "wife did all the driving" during a multi-state road trip during which "breaks were also needed"; that he "recently traveled to Mexico via plane, but he mostly stayed in the hotel and did not enjoy the trip" and "required ready access to the restroom"; that he "still has weekly flares of his gastrointestinal symptoms and needs to be near a restroom"; and that "[t]hough he was hired to work three days a week, he reduced it to two hours a week" and was "still calling out on a weekly basis." (AR 1192, 1196.) The ALJ then noted how Plaintiff's alleged gastrointestinal symptoms and limitations were "not consistent with" the record, which showed that his "gastrointestinal issues have not been present for the entire period under consideration" (AR 1196 (citing AR 829)); an "improvement in symptoms" following his gallbladder removal (AR 1196 (citing AR 538, 628–34, 773–76, 760–62, 929, 934–35, 942)); "significant improvement" in his nausea, vomiting, and diarrhea symptoms with budesonide (AR 1197 (citing AR 978, 1672–74, 1716)); and the "complete resolution" of his heartburn and reflux symptoms following his hernia repair (AR 1197 (citing AR 1554–55, 1672, 1727)). This was a clear and convincing reason to discount his subjective symptom testimony.[8] *See Hernandez v. Kijakazi*,

[8] In his reply brief, Plaintiff asserts the ALJ's determination of symptom improvement is taken "out of context with the record as a whole" (Doc. 19 at 4), but the ALJ expressly acknowledges in the decision that "[w]hile many of [Plaintiff's] GI symptoms have resolved or improved, the limitations have been included in the residual functional capacity to address all periods under consideration, including when the symptoms were inadequately controlled." (AR 1200.)

No. 1:20-CV-01565-SKO, 2022 WL 4357967, at *6 (E.D. Cal. Sept. 20, 2022) ("In evaluating a claimant's claimed symptoms, an ALJ may find a plaintiff less credible when their symptoms can be controlled by treatment and/or medication.") (citing 20 C.F.R. § 416.929(c)(3)(iv)–(v) and *Warre*, 439 F.3d at 1006)); *see also Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (an ALJ may reject a claimant's subjective testimony if it is inconsistent with the objective medical evidence) (collecting cases). Contrary to Plaintiff's contention, the Court can reasonably discern the ALJ's path, and that is all that is required of the ALJ. *Guthrie v. Kijakazi,* No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) *(*the ALJ sufficiently explained her reasons for discounting the plaintiff's symptom testimony, and "we can easily follow her reasoning and meaningfully review those reasons.") (citing *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022)); *Cueva v. Kijakazi*, No. 1:20-CV-000407-BAM, 2021 WL 4192872, at *7 (E.D. Cal. Sept. 15, 2021) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015)). *See also Young v. Saul*, 845 F. App'x 518, 519–20 (9th Cir. 2021) ("The ALJ specifically cited Young's written statements and testimony as among the items he had "carefully consider[ed]," and he gave specific reasons why he did not credit Young's claims concerning the 'limiting effects' of Young's symptoms . . . . The ALJ was not required to mention explicitly, in his ruling, each detail of Young's testimony."); *Mazon v. Comm'r of Soc. Sec.*, No. 1:22-cv-00342-SAB, 2023 WL 3177797, at *7 (E.D. May 1, 2023) (the ALJ's sequence of summarizing evidence followed by giving specific findings, followed a conventional organization for ALJ decision writing which is sufficiently clear for judicial review); *Razaqi v. Kijakaz*i, No. 1:20-CV-01705-GSA, 2022 WL 1460204, at *5 (E.D. Cal. May 9, 2022) ("The ALJ did not necessarily match each piece of evidence with the testimony it purportedly undermined, but no controlling precedent requires that level of specificity. No inferential leaps are required to find the ALJ's reasoning clear and convincing."); *cf. Brown-Hunter*, 806 F.3d at 495 (finding error where the ALJ stated only a general, nonspecific finding regarding credibility after simply reciting the medical evidence).

## V. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore

AFFIRMED. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff Brandon Terrel.

IT IS SO ORDERED.

Dated: **August 28, 2026**

/s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE